# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

TONYA COX, individually and as surviving mother of Kayla Cox and Derrick Cox and as Personal Representative of the Estate of Kayla Cox, deceased, and as Personal Representative of the Estate of Derrick Cox, deceased.
        Plaintiff,

v.

GENERAC POWER SYSTEMS, INC., et al.,
        Defendants.

Case No. 2:08-cv-04278-NKL

## ORDER

Plaintiff Tonya Cox filed this action against Defendants Generac Power Systems, Inc.; Sundowner Trailers, Inc.; Sundowner Trailer Company, Inc.; Sundowner of Ohio, Inc; Sundowner of Ohio, LLC; Kerlin Motor Company, Inc. ("Kerlin Motor"); Leslie A. Hodges; D & T Transport, Inc.; David W. Grossman, d/b/a D & T Transport; Thomas W. Tauteris, d/b/a D & T Transport; Mark Clingenpeel; and John Does 1-5 (collectively "Defendants") asserting various products liability claims arising out of the deaths of Kayla Cox and Derrick Cox.[1] Pending before this Court is Kerlin Motor's Motions to Dismiss for Lack of Personal Jurisdiction or in the Alternative for Improper Venue or *Forum Non Conveniens* [Doc. # 72]. For the reasons stated herein, the motion is granted.

---

[1] The facts and arguments are set out fully in the parties' pleadings and briefs and will be recited here only to the extent necessary.

1

**I.	Background**

Kerlin Motor is an Indiana corporation engaged in the business of selling horse trailers. Its principle place of business is Silver Lake, Indiana. It has no offices, employees, real property, or registered agents in Missouri, and it claims not to engage in advertising or any other solicitation of business in Missouri. It maintains a website, which is accessible anywhere in the world via the internet. According to the Affidavit of Rick Kerlin, secretary of Kerlin Motor [Doc. # 73, ex. A], the company has sold approximately 2,200 trailers between 2003 and 2009. Four of those sales, or roughly 0.2 percent of the company's sales by volume, have been to Missouri residents. Kerlin Motor is licensed as a dealer in Indiana but not in Missouri.

Kerlin Motor sold a thirty-foot horse trailer – which included living quarters to be used for overnight sleeping – to co-defendant Mark Clingenpeel, who told Kerlin Motor he was an Indiana resident who had lived in Indiana for ten years prior to the sale. Kerlin Motor claims it came into possession of the trailer as part of a trade-in from an unknown Indiana resident. When buying the trailer, Mr. Clingenpeel presented Kerlin Motor with a Missouri commercial driver's license ("CDL"). Kerlin Motor does not dispute that at all times between that purchase and the accident giving rise to this litigation, Mr. Clingenpeel owned and insured the trailer in question.

In November 2006, Ms. Hodges, Jeffery Cox, Kayla Cox, and Derrick Cox traveled from Ms. Hodges's home in Indiana to a horse show and sale in Carthage, Missouri. As part of her employment with Defendant D & T Transport, Inc., Ms. Hodges drove the large

pickup truck to which the trailer in question was attached. While in Carthage, the four spent the night sleeping in the trailer's living quarters. The living quarters received electricity from a gasoline-powered generator. Ms. Cox alleges that carbon monoxide leaked from the generator through either the windows or walls of the trailer and poisoned to death Jeffery Cox, Kayla Cox, and Derrick Cox. Ms. Hodges survived the incident. Ms. Cox advances various products liability theories, both strict liability and negligence, that she claims entitle her to recover for the wrongful deaths of Kayla Cox and Derrick Cox, her minor children.

Kerlin Motor argues in its briefs in support of its Motion to Dismiss [Docs. ## 73, 88] that this Court lacks personal jurisdiction over it. It argues that general personal jurisdiction is lacking because the company does not have continuous or systematic contacts with Missouri. It further argues that Missouri's long-arm statute, Rev. Mo. Stat. § 506.500 (2003), does not grant specific jurisdiction because Ms. Cox's claims against Kerlin Motor do not result from injuries arising from or relating to activities purposefully directed at Missouri. It asserts that to subject it to this Court's jurisdiction would violate its Constitutional due process rights, because to do so would be contrary to traditional notions of fair play and substantial justice. Alternatively, it argues that this Court should transfer the action to the Northern District of Indiana as a more appropriate forum.

Ms. Cox argues in her brief [Doc. # 86] that Missouri's long-arm statute grants this Court personal jurisdiction over Kerlin Motor because the sale of the trailer to Mr. Clingenpeel, who had a Missouri CDL, was an action purposefully directed at Missouri, and because this litigation arises out of that sale. Additionally she claims that Kerlin Motor's due

3

Case 2:08-cv-04278-NKL   Document 93   Filed 06/15/09   Page 3 of 9

process rights would not be violated by this Court's exercise of jurisdiction, because the company purposefully availed itself of the privilege of conducting activities in Missouri.

## II. Discussion

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff has the burden of making a prima facie showing that personal jurisdiction exists. *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citations omitted). The Court views the evidence in the light most favorable to the plaintiff, and resolves factual conflicts in the plaintiff's favor. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). Even so, a plaintiff must produce some evidence; conclusory allegations are insufficient. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072–73 (8th Cir. 2004).

To exercise personal jurisdiction over a nonresident defendant, a federal court in a diversity action must ordinarily determine (1) whether that defendant is subject to the forum state's long-arm statute and (2) whether the exercise of personal jurisdiction would comport with due process. *Primus Corp. v. Centreformat Ltd.*, 221 Fed. Appx. 492, 493 (8th Cir. 2007) (citing *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004)). Both the Eighth Circuit and the Missouri Supreme Court have noted that Missouri's long-arm statute[2] extends

---

[2]Missouri's long-arm statute provides in relevant part:
> [A]ny corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such corporation to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts: (1) The transaction of any business within this state; (2) The making of any contract within this state; (3) The commission of a tortious act within this state.

MO. REV. STAT. § 506.500 (ellipses omitted).

4

jurisdiction to all cases where due process permits the exercise of personal jurisdiction. *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000) (citing *State v. Pinnell*, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)). Thus, this Court need only consider whether the exercise of jurisdiction in this case would comport with due process; if it does, Kerlin Motor will be subject to the long-arm statute, and if it does not, the claims will be dismissed for want of personal jurisdiction. *See id*.

Due process does not support the exercise of personal jurisdiction by a state over a nonresident who has no meaningful contacts or ties to that state. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945). Instead, "[d]ue process requires 'minimum contacts' between a nonresident defendant and the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Steinbuch*, 518 F.3d at 585 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). These contacts must be such that the defendant "should reasonably anticipate being haled into court" in Missouri. *World-Wide Volkswagen*, 444 U.S. at 297. "The minimum contact inquiry focuses on whether the defendant [has] purposely availed itself of the privilege of conducting activities within the forum state and thereby invoked the benefits and protections of its laws." *Steinbuch*, 518 F.3d at 586 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

In determining whether a nonresident defendant's contacts with Missouri are sufficient to subject it to the personal jurisdiction of Missouri courts, the Court considers five factors, the first three of which are the most important: (1) the nature and quality of that

5

Case 2:08-cv-04278-NKL   Document 93   Filed 06/15/09   Page 5 of 9

defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the connection of the cause of action to the contacts; (4) the interest of the forum state in the litigation; and (5) the convenience or inconvenience to the parties. *Steinbuch*, 518 F.3d at 586. With respect to the third factor, the Supreme Court has differentiated between general and specific personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court may exercise specific personal jurisdiction over a nonresident defendant where the cause of action arises from or is connected to the defendant's contacts with the forum state.[3] *Dever*, 380 F.3d at 1073; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985). The Supreme Court has held that these five factors can be satisfied when a company "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *See World-Wide Volkswagen*, 444 U.S. at 298.

*World-Wide Volkswagen* was factually similar to this case – a car dealership from New York that served New York, New Jersey, and Connecticut was sued in Oklahoma state

---

[3]Where a defendant has "continuous and systematic" contacts with a forum state, courts in the state may exercise *general* personal jurisdiction over the defendant, even where the cause of action or alleged injury is unrelated to those contacts or has no connection with the forum state. *See Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)). It is not entirely clear whether Ms. Cox is arguing for this Court's exercise of specific or general personal jurisdiction over Kerlin Motor. Although the Second Amended Complaint asserts that Kerlin Motor had "substantial and continuing" contacts with Missouri [Doc. # 43, att. 1, ¶ 27], Ms. Cox's brief does not appear to claim that Kerlin Motor had any sort of "continuous and systematic" contacts, and she concedes that her "causes of action must [. . .] arise out of or relate to the defendant's contacts with Missouri," [Doc. # 86, p. 7] a notion relevant to *specific* jurisdiction analysis. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985). As such, this Court will treat her argument as one for specific rather than general jurisdiction.

court by a New York resident who had purchased a car from the defendant in New York before driving the car to Oklahoma, where it was involved in a traffic accident. *See generally id*. at 288-89. As the court explained, "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id*. at 297. The Supreme Court concluded that the New York dealer could not reasonably anticipate being haled into Oklahoma court, just because a car can be expected to travel outside New York. *Id*. at 298. "It is foreseeable that the purchasers of automobiles [. . .] may take them to Oklahoma. But the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" *Id*. (quoting *Hanson*, 357 U.S. at 253).

The facts before this Court are slightly different because Clingenpeel had a commercial license from Missouri, putting Kerlin on notice that Clingenpeel may drive the trailer to Missouri. However, the unilateral act of Clingenpeel moving the vehicle to Missouri does not subject Kerlen Motors to liability in Missouri for two reasons.

First, even if Kerlin Motor should have known that Mr. Clingenpeel was likely to take the trailer to Missouri (despite his assertion at the time that he was an Indiana resident for the past decade), that fact does not establish that Kerlin Motor purposely availed itself of Missouri laws or protections. Instead, it serves only to increase the foreseeability of the trailer's eventual arrival in Missouri. *See World-Wide Volkswagen*, 444 U.S. at 297. As

7

Justice White wrote:

> If foreseeability were the criterion, a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there; a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage caused in New Jersey; or a Florida soft-drink concessionaire could be summoned to Alaska to account for injuries happening there. Every seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel.

*Id.* at 296 (internal citations omitted).

Second, the fact that this trailer eventually ended up in Missouri is a random occurrence with no connection to Kerlin Motor's sale to Mr. Clingenpeel, as it was Ms. Hodges – not Mr. Clingenpeel – who drove the trailer to Carthage, Missouri. Ms. Hodges's unilateral act of bringing the trailer to Missouri is not something Kerlin Motor could have reasonably anticipated; nor could it reasonably anticipate being in a Missouri court merely because it was sold to an Indiana resident with a Missouri commercial license.

Nothing in the parties' pleadings or filings suggests that Kerlin Motor ever took any action to target Missouri as a market, only that it agreed to sell to a person holding a Missouri CDL. *Compare Mason v. Mooney Aircraft Corp.*, 02-3323-CV-S-RED, 2003 WL 21244160, *7 (W.D. Mo. May 8, 2003) (finding *World-Wide Volkswagen* distinguishable when advertisements were "*calculated* to reach buyers in distant forums") (emphasis added), *with Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 667 (7th Cir. 1986) (holding that, although a repeated pattern of sales may amount to purposeful availment, a "single contract between the seller and the nonresident buyer, without more, is not enough to meet the purposeful

8

availment test"). *See also Steinbuch*, 518 F.3d at 586 (holding that without purposeful availment, the minimum contacts test is not satisfied). Under these circumstances, the Court has no personal jurisdiction over Kerlin Motors even if Kerlin Motors knew the trailer might someday travel to Missouri. *See Nat'l Gen. Ins. Co. v. Road Side Assistance*, 4:08-323-CV-JLH, 2008 WL 1913279, *1-3 (E.D. Ark. Apr. 25, 2008) (refusing to find personal jurisdiction when an Arkansas resident who traveled to Texas to buy a pickup truck attempted to sue the Texas truck dealership in the Eastern District of Arkansas)

## III. Conclusion

Accordingly, it is hereby ORDERED that Defendant KERLIN MOTOR COMPANY, INC.'s Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 72] is GRANTED.

    s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: June 15, 2009
Jefferson City, Missouri